BENJAMIN SAWYER *vs.* THE INHABITANTS OF NORTHFIELD.

The statute of 1850, *c.* 5, providing that "if any person has heretofore received or suffered, or shall hereafter receive or suffer, any bodily injury," &c. through any defect or want of repair in a highway or bridge, "he may recover in a special action of the case of the county, town or persons, who are by law obliged to repair the same, the amount of damages sustained thereby," if they had reasonable

notice, or if the defect had existed twenty four hours ; and repealing Rev. Sts. *c.* 25, § 22, saving actions, in which verdicts had been rendered when the statute of 1850 took effect; did not prevent the recovery of single damages against a town for an injury occasioned by such a defect or want of repair, in an action upon Rev. Sts. *c.* 25, § 22, which had been commenced, but in which no verdict had been rendered, when the statute of 1850 took effect.

A town is not responsible for a defect or want of repair in a bridge, whereby a public highway passes over a railroad, the proprietors of which are bound by law to keep the bridge in repair.

Shaw, C. J.    This cause came up last year, and was argued upon a preliminary question, of considerable difficulty, which arose in this and several other cases on that circuit.    It is an action on the case  against the town of  Northfield, upon Rev. Sts. *c.* 25, § 22, to recover damages for an alleged defect in a highway which the town was bound to repair.   This action was commenced on the 8th of February, 1850.    The case came up on a bill of exceptions, by which it appeared that a motion was made in the court of common pleas to dismiss the action, on the ground that an act had been passed, (*St.* 1850, *c.* 5,) by which Rev. Sts. *c.* 25, § 22, had been repealed, without any saving clause, except in favor of pending actions, in which a verdict had  been rendered ; and, of course, that there was no law now in force, by which this action could be prosecuted, and judgment given.    After the passage of the act of 1850, the plaintiff was allowed by the court of common pleas to amend his declaration, by withdrawing his claim for double damages.

The question arises upon the construction and effect of *St.* 1850, *c.* 5.    This act was passed on the 2d of February, 1850, a few days before this action was commenced ; but no special provision being inserted, in regard to the time of its taking effect, it stood upon the general law making it take effect in thirty days from its passage, namely, on the 7th of March, 1850.

The form and structure of this statute are somewhat peculiar.    The first section provides, that " if any person has here tofore received or suffered, or shall hereafter receive or suffer, any bodily injury, or any damage in his property," &c., and so proceeds almost in the terms of Rev. Sts. *c.* 25, § 22.    It sub-

stitutes the term " bodily injury," instead of " injury in his person," in conformity with the recent decision in the case of *Harwood* v. *Lowell*, 4 Cush. 310.   The immediate occasion of the statute probably was the recent decision in the case of *Brady* v. *Lowell*, 3 Cush. 121, in which it was held, that no action would lie against a town, either for single or double damages, unless the defect had existed twenty four hours, at the time of the accident.   It proceeds to enact, that a person so suffering may recover in a special action of the case, of the county, town or persons who are by law obliged to repair the same, the amount of damage sustained thereby, if such county, town or persons, had reasonable notice, or if the same had existed twenty four hours.   With some changes of phraseology it substantially reënacts the old law with two important alterations ; one was, substituting actual reasonable notice or twenty four hours existence of the defect, instead of making twenty four hours existence an absolute condition; thereby altering the old law as expounded in *Brady* v. *Lowell ;* the other giving an action for the actual damage, instead of double those damages, in the nature of a penalty.   The latter was an amendment which had often been mentioned and was much desired.

The second section of this statute is as follows :   " The twenty second section of the twenty fifth chapter of the revised statutes, is hereby repealed; provided, that this act shall not affect any action for the recovery of *such* damages, in which a verdict may or shall have been rendered, before this act shall take effect."   From this peculiar phraseology, it would seem probable, that there had been some intermediate provision as the statute was first drawn, limiting the repeal of the old law so as to confine it to that part of the statute which gave an action for double damages, in which case the exception of actions for the recovery of *such* damages, that is, double damages, would have been significant and intelligible, and conformable to what appears to have been the purpose of the act. As it is, the term " for the recovery of *such* damages" is without meaning, because the repeal is general, and applies to all actions, in which a verdict may not have been recovered, for any

damages, single or double. But we must take the act as we find it, and construe it according to its terms; applying, how-ever, the common rule of construction, that every provision, clause and word, is to be taken into consideration, in putting a construction upon the whole.

The argument of the defendants is, that the old law was wholly repealed, and a new law was made, giving a more limited right of action; and then their argument is, that, at all events, this action cannot be maintained; not on the old law, because it has been repealed, and no judgment can be rendered unless the law is in force, at the time of such rendition, to warrant it; and not on the new law, because it had not gone into operation, when this action was commenced. Had the original act been repealed in terms, by a distinct substantive act, and another act had been subsequently passed giving the qualified remedy provided for in the statute in question, 'the defendants' argument would have been extremely plausible, perhaps unanswerable. In such a case, it would be very clearly the intention of the legislature wholly to annul and abrogate the existing law; and then the new and qualified right and remedy given by the succeeding act would be a new creation, and begin and take its effect from the passing of such new law. But the first obvious consideration affecting the act in question is, that the repeal of the existing law, and the provision for a qualified remedy and right of action for the same damage, operate *eo instanti* — take effect at the same moment. So that there was no interval of time, when a right of action against a town for single damages, and a remedy for that right, did not exist. Whatever name therefore may be given to this measure, or in whatever form it may be put, it is essentially a modification of the preëxisting law, retain-ing a part and abrogating a part. There never has been a moment, from the time the accident occurred, of which the plain-tiff complains, to the present time, when there was not a law in force, giving him a remedy against the town, for single damages. We are endeavoring to ascertain, from the statute itself, what the legislature intended by their enactments. There is another view, tending to show that the legislature

did not intend to annul and extinguish the old law, and pro-
vide a new one, commencing and taking effect, as it must,
from the time of its enactment. It is well established by
many decisions, that in this commonwealth there is no remedy
by the common law, for a sufferer by a defect in a highway,
against a town. *Mower* v. *Leicester*, 9 Mass. 247. The
remedy is wholly by statute law; begins with it, is regulated
and limited by it, and ends with it. Now if the legislature
were making a new law in 1850, charging towns with liabili-
ties for accidents from defects in their highways, it would not
be within the just province of legislative authority, to declare,
that they should be liable for accidents, which had occurred at
anterior periods, when no law was in existence rendering
them liable. And if the preëxisting law was absolutely an-
nulled, it was the same as if it had never existed.

It is to be presumed that the legislature well understood this
just limitation upon their authority. It is not to be presumed
that they intended to exercise an act of power not within the
scope of their legitimate authority, by making a party respon-
sible for past casualties, who was not responsible for them,
when they occurred; especially, when the same purpose could
be accomplished, by the modification and melioration of the
existing law, in a mode entirely free from objection. And
when the whole act taken together will admit of a construc-
tion, which assumes that the legislature have not only acted
within the scope of their authority, but exercised a beneficial
and useful power, we are to adopt it, rather than put a con-
struction upon it, though more literal, which goes on the as-
sumption, that they have exceeded their authority, or even
exercised a doubtful power.

The act, of which we are endeavoring to ascertain the true
construction, provides that " if any person has heretofore re-
ceived or suffered, or shall hereafter receive and suffer any bo-
dily injury," &c. Now treating this as a new law, charging a
heavy burden upon towns, for past acts, in cases where there
was no law making them liable at the time, it would be a harsh
and doubtful exercise of power, if not unconstitutional and
void. But treating the whole act as a modification of the pre-

existing law, the new provision gives a cause of action and a re-medy, only where there was one before, that is, in the same cases of defect of highways, for actual damages sustained; and it merely takes away, both from past and future cases, the harsher claim, in the nature of a penalty, for double damages. We think, therefore, that we are not bound to construe the repealing clause in the second section, as an absolute repeal; when, taking the whole statute together, it is manifest that the legislature in-tended a limited repeal only; repealing that part of the statute which gave double damages, and retaining and continuing in force, in the form of a reënactment, that part of the old law which was strictly remedial. This doctrine receives a power-ful illustration, by the history of the revised statutes. All the preëxisting general statutes of the commonwealth were repealed, in terms; but new laws, preserving all existing rights and remedies, were made, to take effect *eo instanti* with such repeal. But for the saving efficacy of the principle on which we construe this act, all pending actions would have been abated, and all existing rights of action, depending on statute, taken away.

It seemed to be assumed in the argument, that this action must abate and be dismissed, although the plaintiff under the provision in the first section might bring a new action. Per-haps, if the statute of 1850 could be construed as giving a new and valid right of action and a new remedy, founded upon and commencing with it, a new action must have been commenced. But if we are right in our construction, saving the right of action, it preserves the action itself. This action was rightly brought, and rightly prosecuted up to the moment when this act went into operation. The words of the statute are, "if any person has heretofore suffered," " he may recover in a special action of the case;" not that he may commence an action, or bring an action. When the statute went into operation, and the right and the remedy were both preserved and continued, we think the decision of the judge, allowing the plaintiff to amend his declaration by withdrawing the claim for double damages, and declining to dismiss the action, vas correct. [See *St.* 1851, *c.* 32.]

2. We are then brought to a consideration of the other point in the case. The defect, in respect to which the plaintiff seeks to recover damages of the town, was of a bridge in the town of Northfield, erected on a public highway over and across a deep cut, made by the Connecticut River Railroad Company for the use of their road. It appeared that the bridge in question was made by the said railroad company, by order of the county commissioners, and that it had continued ever since unaltered. By reference to the order of the county commissioners, being part of a general order, we find it to be as follows: " The road near Sawyer's Mills to cross over said railroad. Said company to build and forever maintain a good bridge, thirteen feet wide, at the present grade of said road." The defendants objected, that upon this evidence no action could be maintained against the town; but the court overruled the objection. This question is now renewed before this court. The defendants contend that they are not responsible for any defect or want of repair in the bridge in question, because it is one which the proprietors of the railroad were required by law to build and did build, and one which they are in like manner bound to maintain and keep in repair. The provision of law, under which towns are chargeable, if at all, and on which the plaintiff relies, and did rely when he brought his action, is Rev. Sts. *c.* 25, § 22. By this provision, the party suffering damage, by any defect or want of repair, may recover of the county, town or person respectively, that is by law obliged to repair the same. The right of action is given against a town, if the town is obliged, and only in case the town is obliged by law, to repair the same. To ascertain this, we are to look at other provisions of law. By § 1 of the same chapter, it is provided that all highways, town ways, causeways and bridges, within the bounds of any town, shall be kept in repair at the expense of such town, where other sufficient provision is not made therefor. This creates a qualified, and not a general liability. If there be a turnpike or bridge corporation, bound either by a general law, or by the terms of its charter, to maintain and repair a highway or bridge, then, by the terms of the statute, towns are not liable. It is not to

be regarded as a special exemption from the performance of a duty; it forms a case where the liability of towns does not attach.

Then the question is, whether the liability of the railroad corporation to keep this bridge and its abutments in repair, is such sufficient provision therefor, as to prevent any liability for its defect from attaching to the town. When railroads came to be established in this commonwealth, it was at once perceived that they must of necessity cross other public ways; and as of necessity the railway must be kept on a level, or nearly so, intersecting roads must often be raised or lowered, and bridges erected, in order to adapt these roads to the grade of the railroad. But as these structures were to be raised, and abutments made, solely for the benefit of the railroad, it was strictly equitable, that the cost, both of making and maintaining them, should be charged on the proprietors of the road, as part of the expense of making and maintaining the general structure. Some provisions were made with a view to this object, in the earlier acts of incorporation; but it is not necessary to examine the provisions prior to the revised statutes, which contained regulations intended to form a general system, and which were passed long before the Connecticut River Railroad Company was incorporated. By Rev. Sts. *c.* 39, § 72, it is provided that every railroad corporation shall maintain and keep in repair all bridges, with their abutments, which such corporation shall conduct over or under any turnpike road, canal, highway or other way. This law expressly declares the duty of the railroad company to maintain and keep such bridges in repair. It applies to just such a bridge as the one of the defect in which the plaintiff complains. This duty was clearly recognized in the case of *Cambridge & Somerville* v. *Charlestown Branch Railroad,* 7 Met. 72. That this duty devolves directly upon the railroad company and not upon the town in the first instance, is substantially decided in *Parker* v. *Boston & Maine Railroad,* 3 Cush. 119. But if there could exist any doubt upon the provision of the revised statutes above referred to, the duty is more distinctly and emphatically declared by *St.* 1846, *c.* 271, § 1, to the pro-

42*

visions of which the Connecticut River Railroad Company were made subject. It provides that "every railroad corporation, which may hereafter construct a railroad across any turnpike, highway or town way shall construct it so as to cross over or under such turnpike, highway, or town way." "And such railroad corporation shall build, keep up and maintain in good repair, such bridges, with suitable and convenient approaches thereto," &c. The order of the county commissioners, laying out this road, was therefore well warranted; for though that order did not create, it did justly and legally declare, the duty of the Connecticut River Railroad Company, not only to build, but forever to maintain the bridge in question. It was a provision adequate to its purpose, and permanent in its nature.

The court are therefore of opinion, that there was sufficient provision made by law for the expense of keeping said bridge in repair; that the town were not bound to repair the same, and therefore were not liable to the plaintiff for any damage sustained by him, by reason of any defect or want of repair thereof.                                   *Verdict set aside.*

G. T. Davis, for the defendants.

D. Aiken and G. Grennell, for the plaintiff.